IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LEZLIE BYRUM, et al.,

    Plaintiffs,                   No. MC S-09-0110 MCE GGH

    v.

COMPASS VISION, INC., et al.,

    Defendants.
_____/

JOANNE ELIZABETH CLEVELAND, et al.,

    Plaintiffs,                   No. MC S-09-0111 MCE GGH

    v.

COMPASS VISION, INC., et al.,

    Defendants.
_____/

LORIE GARLICK,

    Plaintiff,                    No. MC S- 09-0112 MCE GGH

    v.

COMPASS VISION, INC., et al.,

    Defendants.
_____/

1

| 1  | DEBORAH JEAN SMITH, et al.,           |                              |
|----|---------------------------------------|------------------------------|
| 2  |     Plaintiffs,   | No. MC S-09-0113 MCE GGH     |
| 3  |   v.                        |                              |
| 4  | COMPASS VISION, INC., et al.,         |                              |
| 5  |     Defendants.   |                              |
| 6  | _____/ |              |
| 7  | MAGDA GONZALEZ, et al.,               |                              |
| 8  |     Plaintiffs,   | No. MC S-09-0114 MCE GGH     |
| 9  |   v.                        |                              |
| 10 | COMPASS VISION, INC., et al.,         | ORDER                        |
| 11 |     Defendants.   |                              |
| 12 | _____/ |              |

Previously pending on this court's law and motion calendar for January 21, 1010, were motions for protective order in each of these cases, filed by Movant State of California, Department of Consumer Affairs ("DCA"), on behalf of the Board of Registered Nursing, and Board of Pharmacy.[1] Geoffrey Allen appeared for movant. Steven Kane represented plaintiffs. Jennifer Dauer appeared for defendant Compass Vision, Inc. ("Compass").[2] David Beach and Robert Jassoy represented defendant National Medical Services, Inc. dba NMS LABS ("NMS"). Jeremy Meier and Tom Woods represented third party defendant Maximus, Inc., contractors involved with the above state agency and boards.

The "resisting parties" to the discovery sought are non-party DCA, the nurse and pharmacy Boards, NMS labs and Maximus. Compass and the plaintiffs in each of the out-of-district actions seek production of all documents.

---

[1] The actions pertaining to the nurses recovery program are 09-110 and 09-113. Cases pertaining to both nurses' and pharmacists' recovery programs are 09-111, 09-112, and 09-114.

[2] Compass is the party that issued the subpoenas.

2

Having reviewed the parties' joint statement and heard oral argument, the court now issues the following order.

BACKGROUND

In this out-of-district discovery matter, non-party movant DCA seeks to prevent Compass from deposing current or former Board of Registered Nursing ("Board") employees about the plaintiffs' files regarding their drug test results, disciplinary action, and determinations of non-compliance in regard to a drug and alcohol recovery program entered into by plaintiffs who are nurses and pharmacists with a former admitted drug or alcohol addiction.[3] DCA also seeks to prevent any acquisition of information in the plaintiffs' medical files in connection with the program, as well as documents relating to the polices and procedures of the Boards.

Plaintiffs, nurses and pharmacists, brought these actions, claiming that regular drug testing through this diversion program resulted in false positives in urine samples, due to use of ethyl glucuronide ("EtG") which is used to detect alcohol. Plaintiffs claim that Compass and its laboratory that performed the testing, "used a new, scientifically unreliable test and set cut-off levels for a 'positive' EtG test too low." Compass in turn filed a third party complaint against Maximus, a prime contractor with the DCA for administration of portions of the diversion program, regarding its administration of the Program.

Plaintiffs do not object to release of their files; indeed, plaintiffs urge that such be done, and to the extent legally germane, have waived any privilege associated with their records. Despite this waiver, the gist of the protective order motions involves DCA's assertion of specific California statutes proscribing release and use of the nurses/pharmacists confidential files, and California's "parent" or omnibus privilege statute which, somewhat less strictly, appears to encompass the discovery and use of all documents subject to privilege under California law.

\\\\\

---

[3] The underlying actions have been brought in the Northern and Southern Districts.

DISCUSSION[4]

A. Choice of Law

Because the subject matter jurisdiction for this action is based on diversity of citizenship, the court must ascertain the appropriate law, federal or California, for discussion of the issues. In this diversity action, questions of substantive privilege are governed by state law. Fed. R. Ev. 501; Pagano v. Oroville Hospital, 145 F.R.D. 683, 687 (E.D.Cal. 1993).[5] See also First Pacific Networks, Inc. v. Atlantic Mutual Ins. Co., 163 F.R.D. 574, 576 (N.D. Cal. 1995); Bank of the West v. Valley Nat'l Bank of Ariz., 132 F.R.D. 250, 251 (N.D. Cal. 1990). However, matters going to discovery procedural issues, e.g., preparation of privilege logs, are entirely federal in nature. "Though a federal court in a diversity action is to apply the substantive law of the forum in which it sits, discovery, as a procedural matter, is governed in a federal court only by the Federal Rules of Civil Procedure and state discovery practices are irrelevant. See 8 Wright & Miller, Federal Practice and Procedure: Civil § 2005 (1970)." American Ben. Life Ins.

---

[4] By order of December 16, 2009, movant was directed to brief the issue of why, when a *state wide* governmental entity is subpoenaed for document production in connection with ongoing cases in other districts, the Eastern District should be the focal point for discovery matters in those cases. In response, movant filed a separate stipulation signed by all parties referring to Fed. R. Civ. P. 45(a)(2), for the proposition that a subpoena for production of documents must issue from the court in the district where the production or inspection is to be made, and that a subpoena for testimony must issue from the court where the deposition is to take place.

The undersigned is well aware of Rule 45; however, in this advanced technological age of electronic document retention, satellite offices throughout the state, and ease of video depositions, it is not entirely clear why discovery must take place in the city where the state agency has its head office. That is, the custodian of state agency records may be present throughout the state. Furthermore, to the extent that Maximus has possession of documents as the contractor for DCA, those documents may well be located in the Northern or Southern District. There are other practical considerations for bringing a motion for protective order in the district where the main litigation is proceeding, such as the possible deleterious effect of a ruling by an outside district on the scheduling order in the main case, or untoward trial limiting discovery rulings by a judge unaffiliated with the case.

Nevertheless, the undersigned has determined to proceed with this motion.

[5] Despite the observations in a few cases that Pagano had been implicitly overruled by the Supreme Court (on matters unrelated to the proposition advanced herein), no such overruling ever took place.

4

Co. v. Ille, 87 F.R.D. 540, 542 (D.C. Okl. 1978).  See also Eureka Financial Corp v. Hartford Acc. & Indem. Co. 136 F.R.D. 179, 182; see Fed. R. Civ. P. 26 (b)(5).  Determination of relevance is a federal matter.

B. Analysis

The subpoenas at issue are attached to the motion for protective order Case No. 09-110,(dkt. # 12) as exhibits A, B, C. (Nursing subpoenas) See also Case No. 111, dkt. # 13, Case No. 112, dkt.# 11, Case No. 113, dkt. # 11, Case No. 114, dkt.# 11.  All are subpoenas duces tecum which seek documents and testimony from Board employees.  The documents are pertinent to plaintiffs' participation in the above characterized diversion program.  For example, "The following documents [request] relate to participation in the California State Department of Consumer Affairs, Board of Registered Nursing's ("Board") diversion program and/or probationary program, whether administered by Maximus, Inc. or directly by the Board:" Case No. 09-110, dkt # 12, Exhibit A.  The subpoenas ask for two general categories of documents, those specific to the different plaintiffs, and those which request production of policies and procedures pertinent to the nursing and pharmacy diversion programs.   All subpoenas ask essentially for the same documents, and testimony relating thereto.

The governing statutes are both specific to nurses and pharmacists, and general with respect to assertion of privilege invocations and waiver.

The Nursing Practice Act which provides in part:

> All board and committee records and records of a proceeding pertaining to the participation of a registered nurse in the diversion program shall be kept confidential and are not subject to discovery or subpoena, except as specified in subdivision (b) of Section 2770.11 and subdivision (c).

Bus. & Prof. Code § 2770.12.[6]

---

[6] Entities which are contracted to perform work pursuant to these two statutory schemes are immunized from discovery as well:
(b) Notwithstanding any other provision of law, all records and documents

5

The exceptions referenced above are: (1) a waiver of any rights to confidentiality if the person in the program is deemed a threat to public safety and in an administrative disciplinary proceeding (§ 2770.11); and (2) again, repeating disciplinary proceedings waiver, *and "Files a lawsuit against the board relating to any aspect of the diversion program."* (§ 2770.12(c)) (emphasis added). The waivers referenced are waivers by the *nurses involved, and not that of a governmental agency or contractor,* § 2770.12 (c).[7] Thus, the waiver provisions for nurses go further than set forth in the parties' joint statements, and is meant to apply to lawsuits as well as administrative proceedings.

The pharmacist's statute is not quite as detailed in the waiver aspects it does not mention a waiver of the privilege in lawsuits:

> All board records and records of the pharmacists recovery program pertaining to the treatment of a pharmacist or intern pharmacist in the program shall be kept confidential and are not subject to discovery, subpoena, or disclosure pursuant to Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code. However, board records and records of the pharmacists recovery program may be disclosed and testimony provided in connection with participation in the pharmacists recovery program, but only to the extent those records or testimony are relevant to the conduct for which the pharmacist or intern pharmacist was terminated from the pharmacists recovery program.

Cal. Bus. & Prof. Code § 4372.

In the absence of other pertinent governing authority, the undersigned would find that the plain meaning of the pharmacist statute precludes any discovery outside of the limitation therein. The fact that the California Legislature might have acted inconsistently with respect to the nurses and pharmacists is a "so what." That is what happens sometimes when there are too many laws spread out in too many places. Regardless, if it is a problem, it would be up to the

---

pertaining to services for the treatment and rehabilitation of licentiates impaired by alcohol or dangerous drugs provided by any contract vendor to the department or to any board within the department shall be kept confidential and are not subject to discovery or subpoena.
Cal. Bus. & Prof. Code § 156.1(b).

[7]"A registered nurse shall be deemed to have waived...."

Legislature to correct it.

But the fact of the matter is that the pharmacist statute does not stand alone. Also pertinent to the analysis is Cal. Evid. Code § 1040(b) (1), the apparent umbrella or parent privilege assertion statute in California law, which incorporates § 2770.12 and § 4372, *inter alia*. This statute sets forth the circumstances under which confidential information may be withheld or disclosed in litigation, and when a privilege may be waived. Section 1040 provides in relevant part:

> (a) As used in this section, "official information" means information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made.
> (b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing official information, if the privilege is claimed by a person authorized by the public entity to do so and:
> (1) Disclosure is forbidden by an act of the Congress of the United States or a statute of this state; or
> (2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice; but no privilege may be claimed under this paragraph if any person authorized to do so has consented that the information be disclosed in the proceeding. In determining whether disclosure of the information is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered.

DCA fails to mention the portion of the code which provides, "but no privilege may be claimed under this paragraph if any person authorized to do so has consented that the information be disclosed in the proceeding ..." Cal. Evid. Code § 1040(b)(2). Clearly, although the governmental agencies have a right to assert the privilege on behalf of others, the statute precludes such assertion when the person(s) authorized to do so [by law] has consented to its disclosure.

\\\\\

Section 1044, which addresses access to medical or psychological history records and comes under the same article as § 1040, provides that "*[n]othing in this article* shall be construed to affect the right of access to records of medical or psychological history where such access would otherwise be available under Section 996 or 1016." (Emphasis added). Section 996 discusses the patient litigant exception to the physician patient privilege, and § 1016 addresses the patient litigant exception to the psychotherapist patient privilege. Of course, the persons authorized by state law to hold such medical privileges (and waive them) are the patients themselves.

At hearing, DCA initially conceded that the Nursing and Pharmacy statutes can be harmonized with § 1040, are meant to be read together, and in fact asserted that the ultimate privilege arises from § 1040. Later in the hearing, counsel for DCA retracted his concession when he realized that §§ 1040(b) and 1044 would result in a clear direction that the nurses and pharmacists hold the privilege which they may waive if they so desire.

The undersigned concludes as follows:

(1) None of the resisting party(s)' objections have merit with respect to documents and testimony sought which are not reflective of *treatment* of plaintiffs. The above quoted statutes clearly refer only to treatment records reflecting plaintiff's participation in the diversion programs. Thus, document requests such as "Policies, procedures, or guidelines for administration of the diversion program" (Exhibit B, Case No. 110, dkt.#11), are clearly producible and have no statutory privilege. To the extent that the resisting parties seek § 1040(b)(2) protection, no showing whatsoever has been made that such document requests reflective of policy/procedures bear any need for confidentiality. The undersigned will not delineate here the precise location within the numerous subpoenas of every "policy and procedure" request. Suffice it to say here that they are clearly evident from their own words.

(2) A closer issue involves the treatment records of the nurse plaintiffs, and as the parties indicate, there is a dearth of case authority on the subject. However, the very statutory

scheme relied upon by the resisting parties clearly shows that the privilege is to be held by the individual nurses in the diversion programs. This includes a waiver in a *lawsuit* against the board. And, it makes no sense to exclude from possible waiver lawsuits against Board contracted entities such as Compass or Maximus. No other conclusion can be reached upon review of § 2770.12(c) which references the act of waiver by the involved *nurses*. If the Legislature meant to have the privilege abide in the DCA or the Boards, there would have been no need to reference a waiver by the nurses. Indeed, there is no mention of the DCA or the Boards as holding the privilege (as opposed to asserting it in appropriate circumstances on behalf of the nurses).

Confirming the above, § § 1040, 1044 of the Evidence Code again refer to the fact that no privilege is to be asserted when patients decide to waive their physician-patient, or psychotherapist-patient privilege. Plaintiffs (nurses) in the underlying civil cases are viewed as patients in the diversion programs at issue. They receive medical care and mental health therapy for their addictions; the purpose of the program is to heal them and provide recovery for their substance abuse, so that they may avoid further discipline. According to plaintiffs' counsel, a medical review officer is appointed to review results of the drug tests, and the validity of the drug tests is a medical question. Therefore, as patients, the nurses may waive their privileges under the aforementioned exceptions. As a result, § 1044 resolves the matter by creating an exception to § 1040.

NMS contends that plaintiffs are not patients because the context of their diversion program was as a result of a disciplinary action. Because plaintiffs have the opportunity to proceed through the disciplinary process and obtain records in that forum, NMS argues that their remedy is through that administrative framework. The undersigned has reviewed the case cited by NMS, <u>Silberg v. Anderson</u>, 50 Cal.3d 205 (1990), and finds it inapplicable to the instant case. Although a state may have a compelling interest in the finality of its administrative rulings, the instant case is not a collateral attack on the administrative

judgment. Unlike in Silberg, plaintiffs are not suing regarding an error in the prior administrative proceedings. In fact, many of these plaintiffs chose not to go through a prior administrative proceeding. Furthermore, any final administrative decisions involving any of these plaintiffs will not be adversely affected by the outcome of this discovery dispute. Moreover, a discovery motion such as this one is not the proper procedural vehicle in which to raise the issue of whether plaintiffs should have obtained the records through the administrative process.

(3) The outcome in the pharmacists' cases are not as clear as that for the nurses in that for whatever reason, and it appears to be happenstance, the pharmacist substantive non-disclosure statute references only a waiver in the administrative arena. However, again, it is the pharmacists' privilege to waive, and again, reference to the Evidence Code sections 1040, 1044 confirms that the Legislature does not desire to preclude discovery when the holder of the medical privileges affirmatively seeks to waive such in litigation. Statutes should be read to be complementary when possible, and not as conflicting. The undersigned's application of the pharmacist disclosure statute and the umbrella privilege statutes reasonably meld the interpretation of all statutory provisions.

The court finds that plaintiff pharmacists are the holders of the privilege and pursuant to § 1044, they were permitted to waive their privilege in the underlying litigations, and did so.[8]

CONCLUSION

Accordingly, DCA's motions for protective orders in all related cases, are denied. DCA, related state agencies, and related state contractors shall produce all requested documents within seven days of this order, and their personnel shall be subject to deposition as otherwise

\\\\\

\\\\\

---

[8] As DCA has not made an Eleventh Amendment argument, the undersigned finds that it has waived this defense.

10

appropriate. All of these related miscellaneous actions shall be closed upon review of this order by a district judge or upon expiration of time for review.

DATED: 02/02/2010

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:076/Byrum0110.po.wpd